IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TODD UPSHAW, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO. 5:15-CV-395-MTT-MSH |
| VS. | : | 42 U.S.C. § 1983 |
| | : | |
| Warden MCLAUGHLIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | | |

## ORDER AND RECOMMENDATION

Currently pending before the Court are Plaintiff's motions to compel (ECF Nos. 45, 54, 61) and Defendants' motion for summary judgment (ECF No. 55). Plaintiff's motions to compel are denied. For the reasons explained below, it is recommended that Defendants' motion for summary judgment be granted.

## BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on October 8, 2015, asserting due process violations by alleging that he was improperly placed in Tier II classification because of alleged gang affiliation. Compl. 7, ECF No. 1. Plaintiff also alleges violation of his First Amendment rights through denial of access to the library, confiscation of his reading materials, and improper withholding of his mail. Compl. 10, 15.

After a preliminary review, Plaintiff's due process claims against Defendants Lindsey, McLaughlin, Bobbitt, Wilkinson, Bostick and Demundo were allowed to go

forward.  Order 1, Apr. 26, 2016, ECF No. 38.  Plaintiff's First Amendment claims against Defendants Colbert, Hall, McIntosh, and Jones were allowed to go forward based only on alleged deprivation of books, publications, religious texts, and magazines.  *Id.* at 3.

## DISCUSSION

### I. Plaintiff's Motions to Compel

Plaintiff filed a motion to compel (ECF No. 45) on June 20, 2016 stating that he was "having extreme difficulties obtaining the production of discovery material from defendants['] Counsel" and that his April 18, 2016, April 25, 2016, April 28, 2016, and May 31, 2016 discovery requests went unanswered.  Plaintiff notes his attempts to confer in good faith.  Defendants filed a joint response on July 13, 2016 (ECF No. 48), demonstrating that Defendants had, in fact, responded to Plaintiff's discovery requests.  Plaintiff filed two additional motions to compel (ECF Nos. 54, 61) on August 8, 2016 and September 12, 2016.  Defendants again responded (ECF Nos. 57, 61).

Discovery was ordered to be completed within 90 days of the date of filing of an answer or dispositive motion by defendants (whichever came first) and the 90-day period would run separately as to each Defendant.  Order 10-11, Dec. 2, 2015, ECF No. 7.  This timeline was reiterated to Plaintiff by the Clerk of Court.  Letter, May 24, 2016, ECF No. 43.  No discovery extensions were requested or granted.  Defendants McLaughlin, Bobbitt, Bostick, Colbert, Demundo, Hall, and Lindsey filed an answer on February 8, 2016 (ECF No. 17); their discovery period therefore ended on May 8, 2016.  Defendant Wilson filed his answer on March 10, 2016 (ECF No. 23); his discovery period therefore

ended on June 8, 2016.  Defendant Tracy McIntosh filed an answer on April 13, 2016 (ECF No. 36); her discovery period therefore ended on July 12, 2016.  Finally, Defendant Mistie Jones filed an answer on June 28, 2016 (ECF No. 46); her discovery period therefore ended on September 26, 2016.

"[M]otions to compel discovery should be filed before discovery closes."  *Harris v. Bishop*, No. 1:13-cv-53, 2014 WL 3385306, at *3 (M.D. Ga. July 9, 2014).  Plaintiff's first motion to compel was outside of the discovery period for Defendants McLaughlin, Bobbitt, Bostick, Colbert, Demundo, Hall, Lindsey, and Wilson.  Plaintiff's second and third motions to compel were outside of the discovery period for those defendants as well defendants Wilson and McIntosh.  To the extent that Plaintiff's motions to compel were filed outside of the applicable discovery periods, they are denied.

Notwithstanding the timeliness defects noted above, Plaintiff's motions to compel are denied as to all defendants on the merits.  Defendants responded to Plainitiff's numerous discovery requests.  *See* Defs.' Resp. Ex. 1, 3-6, 8, 9 (ECF No. 48).  Plaintiff's speculation that "Counsel is withholding discovery material" is not a sufficient reason to compel discovery.  *See Gray v. Faulkner,* 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("The fact that a party may disbelieve or disagree with a response to a discovery request, however, is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect."); *Rong Ran v. Infinite Energy, Inc.,* No. 1:07–cv–249–MMP–AK, 2010 WL 148240, at *1 (N.D. Fla. Jan.12, 2010) ("Defendants have responded to Plaintiff's [discovery] requests, and the fact that Plaintiff disagrees with Defendants' responses does not provide a basis for this

Court to order any relief."). For the foregoing reasons, Plaintiffs' motions to compel are denied.

## II. Defendants' Motion for Summary Judgment

### A. Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

### B. Official Capacity Claims

Defendants aver that Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. Defs.' Br. in Supp. 18. The Court agrees. Defendants are employees of the Georgia Department of Corrections ("GDOC"). GDOC employees are entitled to Eleventh Amendment immunity for claims in their official capacities. "Official capacity suits for damages against employees of a state agency are suits against the state agency." *Ferguson v. Ga. Dep't of Corr.*, 428 F. Supp. 2d 1339, 1352 (M.D. Ga. 2006). "A suit against a governmental entity which is considered an 'arm of the state'—such as the GDOC—is a suit against the State." *Id.*

(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). "[T]he Eleventh Amendment to the United States Constitution bars a § 1983 action against the State of Georgia and the GDOC unless the State either consents to suit or waives its sovereign immunity with regard to § 1983 claims—neither of which has happened here." *Ferguson*, 428 F. Supp. 2d at 1352. Plaintiff's claims against the Defendants in their official capacities for monetary damages are barred by the Eleventh Amendment and Plaintiff cannot recover monetary damages against the Defendants in their official capacities; it is therefore recommended that Defendants' motion for summary judgment (ECF No. 55) be granted as to the official capacity claims against them.

Additionally, GDOC employees, as state officials acting in their official capacities, are not considered "persons" for purposes of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Ferguson*, 428 F. Supp. 2d at 1352-53. Since § 1983 requires that a "person" deprive a plaintiff of his constitutional rights, the lack of a "person" in this case establishes an independent ground for the denial of Plaintiff's claims. *Will*, 491 U.S. 71. It is therefore recommended that Plaintiff's claims against Defendants in their official capacities be dismissed.

    C.    <u>Compensatory and Punitive Damages</u>

Defendants argue that Plaintiff cannot sustain claims for compensatory and punitive damages, as he has not alleged an actual physical injury. Defs.' Br. in Supp 18. Plaintiff's response demonstrates that he agrees that he cannot recover compensatory damages under a § 1983 claim unless he can establish a physical injury. Pl.'s Resp. 11, ECF No. 67. Title 42 of the United States Code, § 1997e(e) states that "[n]o Federal civil

action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." *See Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009) ("[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant[.]" (citation omitted)). Because the Plaintiff has neither alleged nor offered any evidence to show the requisite physical injury from the alleged constitutional violation, he cannot recover on any claims for compensatory and punitive damages. It is therefore recommend that Defendants' motion for summary judgment be granted as to Plaintiff's claims for compensatory and punitive damages.

D.   First Amendment Claims

Plaintiff asserts First Amendment claims against Defendants Colbert, Hall, McIntyre, and Jones on the grounds that they deprived him of books, publications, religious texts, and magazines. Defendants move for summary judgment on these claims, asserting that Plaintiff has failed to exhaust[1] and that Plaintiff cannot state a claim. Defs.' Br. in Supp. 17-20. Plaintiff simultaneously asserts that he "exhausted his administrative grievance" and Defendant McLaughlin's staff made the grievance process unavailable. Pl.'s Resp. 11-12; Pl.'s Decl. 2, ECF No. 67-5. Plaintiff further argues that depriving him of reading material is improper censorship and administrative segregation inmates should

---

[1] Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008). The Court will treat it as such here.

have the same mail rights as general population inmates. Pl.'s Resp. at 7-11.

### i.     Exhaustion

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted). The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings

in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

Defendants move for summary judgment for lack of exhaustion claiming that Plaintiff did not exhaust his administrative remedies as to Defendants Jones and McIntyre. Defs.' Br. in Supp. 19-20, ECF No. 55-1. Plaintiff attached three relevant grievances to his Complaint. Compl. Ex. 2 at 8-9, 11-12, 14, ECF No. 1-2. Plaintiff responds generally that the grievance process was unavailable because he had difficulty obtaining grievance forms and "every grievance is automatically denied." Pl.'s Decl. 2, ECF No. 67-5. However, he also asserts that he "exhausted his administrative grievance." Pl.'s Resp. 11-12.

Defendants provided the GDOC's Standard Operating Procedures regarding grievances (ECF No. 55-13). For grievances filed on or after December 10, 2012, the GDOC grievance procedure consists of two steps: (1) the Original Grievance, which the Warden must respond to within 40 days and (2) the Central Office Appeal to the Office of the Commissioner, which must be responded to within 100 days. McKenzie Aff. ¶ 10, ECF No. 55-12. An inmate must file an Original Grievance no later than 10 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance. *Id.* at ¶ 12. The Warden can either reject or accept the grievance. *Id.* at ¶ 13. If a grievance is accepted, staff is appointed to investigate the complaint. *Id.* The Warden has forty (40) calendar days from the date the inmate gave his Grievance Form to the Counselor to deliver the decision to the inmate. *Id.* at ¶ 15. An inmate has seven (7) calendar days from the date he receives the response to the Original Grievance to file a

8

Central Office Appeal. *Id.* at ¶ 17. If the time allowed for the Warden to respond to the Original Grievance has expired without the inmate receiving a response to the grievance, the inmate may file a Central Office Appeal, or, alternatively, the inmate may wait until he receives a decision on the Original Grievance, and then file a Central Office Appeal. *Id.* A decision on appeal must be delivered to the inmate within 100 calendar days after receipt of the appeal. *Id.* at ¶ 19. This completes the grievance process. *Id.*

Plaintiff filed Grievance No. 189475 on January 15, 2014, stating that the "Prison Staff here at Macon State (Wardens, Tier II Committee, and all relevant staff members carry[ing] out this unlawful order & acts)" had "impinged on the prisoners' mail correspondence by denying newspapers, magazines, and books directly from publica[ti]on company" Compl. Ex. C-6 at 15, ECF No. 1-2. This grievance was denied pursuant to Tier II phase regulations. *Id.* at 14. Plaintiff appealed this denial, and his appeal was denied. McKenzie Aff. Ex. 3 at 1, ECF No. 55-15.

Plaintiff filed Grievance No. 181612 on September 17, 2014, alleging that "[o]ne of the Cobra Squad members" threw out his personal property—"one being my Dictionary"—during a search of his cell. Plaintiff stated that he did not know the Cobra Squad member's name and he listed no property with any specificity except for the dictionary. Compl. Ex. C-3 at 9, ECF No. 1-2. Plaintiff's grievance was denied on October 16, 2014 due to lack of evidence and because he did not specifically list the Cobra Squad member's name, even though the member's name would have been visible on his or her uniform. *Id.* at 8. There is no indication that Plaintiff appealed this denial. *See* McKenzie Aff. Ex. 3 at 1, ECF No. 55-15.

9

Plaintiff filed Grievance No. 183980 on October 27, 2014.  Plaintiff alleged that "[t]he Prison Staff here at Macon State (Warden, Tier II Committee, and all relevant staff car[ry]ing out this unlawful order of acts)" denied him access to the general library.  Compl. Ex. C-5 at 12, ECF No. 1-2.  This grievance was denied on November 25, 2014 for the following reason:

> According to the Current Tier II/Administrative Segregation policy, while housed in the Tier II unit you are limited to having a Bible or Koran and legal supplies.  Currently, non-legal library materials such as books, magazines, and newspapers are not authorized.  There has been no violation of your rights or policy violation.

*Id.* at 11.  There is no indication that Plaintiff appealed this denial.  *See* McKenzie Aff. Ex. 3 at 1, ECF No. 55-15.

Because at the first stage of the exhaustion analysis the Court must take Plaintiff's version of the facts as being true, Plaintiff's Complaint cannot be dismissed as to Defendants Jones and McIntyre for lack of exhaustion at this first step.  *Turner*, 541 F.3d at 1082; *see also Dollar v. Coweta Cty. Sheriff Office*, 446 F. App'x 248, 251-52 (11th Cir. 2011).

Since the claims against Defendants Jones and McIntyre Jones were not dismissed at the first step, the Court makes factual findings relating to exhaustion—specifically, whether Plaintiff's failure to appeal the denial of his grievances was a result of the process being unavailable.  As explained above, defendant bears the burden of establishing a lack of exhaustion at the second step of the inquiry.  *Turner*, 541 F.3d at 1082-83.  The Court makes the following factual findings and determines that Defendants meet their burden regarding Plaintiff's failure to exhaust.

10

The Grievance related to Plaintiff's access to the general library—Grievance No. 183980—was denied but never appealed. The same is true regarding the Grievance related to the alleged confiscation of Plaintiff's books—Grievance No. 181612. Plaintiff avers generally that the grievance process was "unavailable," but he cites no futile attempt to appeal, nor does he offer any explanation of how he was able to successfully file an appeal to Grievance No. 189475 if the process was unavailable. Defendants proffer an affidavit and grievance log to demonstrate that they received and logged the grievances Plaintiff references—and that Plaintiff was able to appeal, but did not do so here. McKenzie Aff. ¶¶ 22-23 and Ex. 3 at 1, ECF No. 55-15. With these factual findings, the Court determines that Plaintiff failed to exhaust as to Defendants Jones and McIntyre and therefore recommends granting Defendants' motion for summary judgment as to the First Amendment claim against Defendant Jones and McIntyre.

    ii.    First Amendment Claim – merits

The remaining Defendants assert that they are entitled to summary judgment on Plaintiff's First Amendment claims. The First Amendment protects the right to receive and possess newspapers and similar publications. *See Beard v. Banks,* 548 U.S. 521, 543 (2006). Prison officials nevertheless may adopt rules that infringe on a prisoner's First Amendment rights as long as those rules are "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, (1987). The four *Turner* factors used to determine whether a restriction is reasonably related to legitimate penological interests are are:

    (1) whether there is a valid, rational connection between the regulation and

> a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an exaggerated response to prison concerns.

*O'Connor v. Carnahan*, 3:09-cv-224-WS-EMT, 2015 WL 6405976 at *9 (N.D. Fla. Sept. 21, 2015)

The Supreme Court considered a program that restricted certain inmates' access to reading materials designed to motivate better behavior, minimize the amount of property controlled by inmates (and thus, their ability to hide contraband), and to reduce the amount of property available to inmates to fashion homemade weapons. *Beard,* 548 U.S. at 530-31. The Court found that the first rationale alone was sufficient to satisfy *Turner's* requirements. *Id.* Like the program considered in *Beard*, the GDOC Tier II program restricts access to reading material as part of an incentive-based program to motivate better behavior on the part of particularly difficult inmates. The "Tier II Administrative Segregation Program ("Tier II Program") is an offender management program established by the Georgia Department of Corrections ("GDC") to manage inmates who have an established history of violence or disruptive behavior or who otherwise pose a serious threat to the safety and security of the institution." McLaughlin Aff., Ex. A, ECF No. 55-6. The incentive-based program is based upon meeting goals in an individualized case plan. McLaughlin Aff. ¶ 4, ECF No 55-5. A successful inmate should progress through the program and earn additional privileges. *Id.* Ultimately, the inmate's goal is to eventually progress through all the phases and then out of the Tier II

program altogether. *Id.*

Inmates assigned to Phase One and Phase Two of the Tier II Program may not receive magazines, newspapers, or books except for those that are "legal" in nature. McLaughlin Aff. ¶ 14, ECF No 55-5. However, Inmates in Phase One and Phase Two of the Tier II Program—like General Population inmates—may receive an unlimited amount of personal and legal mail (and may also mail out an unlimited amount at their own expense). McLauglin Aff. Ex. A at 26, ECF No. 55-6. They are also allowed to possess one Bible or Koran at all phases of Tier II. *Id.*

Plaintiff was found guilty of 50 Disciplinary Reports in approximately a four-year span of time. McLaughlin Aff. ¶ 23, ECF No 55-5. Plaintiff is the exact type of inmate described in *Beard*, in need of an incentive program to motivate better behavior. There is no genuine issue of material fact regarding the rationale for the program. Defendants' proffered rationale for the withholding of reading materials (other than legal or religious) satisfies the *Turner* requirements. It is therefore recommended that Defendants' motion for summary judgment as to Plaintiff's First Amendment claims be granted.

E.   Due Process Claims

The Plaintiff alleges that the protections of the Due Process Clause should be invoked because, as a Tier II Program inmate, his visitation privileges, telephone privileges, cell accommodations, mail privileges, commissary privileges, exercise privileges, and access to educational and vocational programs are significantly different those of general population inmates. Compl. 21-22. Defendants assert that Plaintiff's placement in the Tier II program has not resulted in an "atypical and significant hardship"

such to invoke the protections of the Due Process Clause. Defs.' Br. in Supp. 14, ECF No. 55-1. Defendants further assert that even if Plaintiff can establish a protected liberty interest that would entitle him to procedural due process, Plaintiff's due process claims nonetheless fail. The Court agrees and recommends Defendants' motion for summary judgment (ECF No. 55) be granted as to Plaintiff's due process claims.

It is well-settled that prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008); *see also Meachum v. Fano,* 427 U.S. 215, 223-24 (1976) (finding the transfer of a prisoner to less agreeable prison does not implicate a liberty interest). However, a prisoner may claim a violation of a protected liberty interest arising out of his confinement in punitive segregation if the placement (1) "will inevitably affect the duration of his sentence;" or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) (applying *Sandin* to find that four-year confinement in administrative segregation did not tip the balance in favor of establishing a liberty interest.).

Although "prisoners do not shed all constitutional rights at the prison gate . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Al-Amin v. Donald*, 165 Fed. App'x 733, 738 (11th Cir. 2006) (citation omitted). Under certain circumstances, segregation is a necessary limitation of privileges and rights

that incarceration demands. *Id.* The transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. *Id.* (citation omitted).

Courts within this circuit have consistently found that visitation, telephone, mail, commissary, exercise, and educational privileges Plaintiff complains of are not "atypical, significant deprivation" such that would invoke the protections of the Due Process Clause. *See, e.g., Whiting v. Owens*, 5:14-cv-104-CAR-MSH, 2014 WL 2769027 at *2 (M.D. Ga. June 18, 2014)(finding that the loss of visitation, telephone and commissary privileges and denial of access to various educational, religious and recreational programs in a Tier II Program were not "atypical of those discomforts normally associated with prison life."); *Abanfi v. Oubre*, 5:12-cv-421-MTT, 2013WL 618539 at *4 (M.D. Ga. Jan. 25, 2013)(noting that "restrictions placed on telephone, visitation or commissary privileges…do not amount to 'dramatic departures' from the ordinary conditions of confinement.")(citation omitted); *Bates v. Andrews*, 4:09-cv-26-SPM-GRJ, 2011 WL 3298522 (N.D. Fla. Mar. 24, 2011)("[I]t is clear that the Due Process Clause does not confer . . . a federal constitutional right for inmates to participate in rehabilitative or recreational prison programs.").

     i.  Defendants McLaughlin, Bostick, Bobbitt, and McIntyre

Procedural due process calls for "such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 930 (1997). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). The Court finds

15

that even if Plaintiff could invoke the protections of the Due Process Clause, he was afforded the due process required.

On October 23, 2013, Defendant McIntyre initially recommended that the Plaintiff enter the Tier II Program based upon the "safe and secure operation of the facility," noting Plaintiff's gang affiliation. McLaughlin Aff., ¶ 24; McIntyre Aff., ¶ 8, Ex. E, F. An Initial Segregation hearing was conducted the next day. Plaintiff was given the opportunity to be heard, and he stated that he was not a gang member. However, it was determined that Plaintiff should remain in the Tier II Program because he was a "threat to safety and secure operations." On October 28, 2013, Defendant Warden McLaughlin concluded Plaintiff should be placed into the Tier II Program because he was a "threat to the safety and secure operations" due to extensive disciplinary history. McLaughlin Aff. ¶ 25, Ex. G.

Plaintiff received a 96-hour Administrative Segregation hearing on October 30, 2013. At that hearing, it was noted that Plaintiff was being placed in the Tier II Program because was a threat to the secure and safe operation of the facility and had received 8 exposure/exhibition disciplinary reports. During the 96-hour Administrative Segregation hearing, Plaintiff had the opportunity to be heard; he again stated he was not a gang member. McLaughlin Aff., ¶ 26, Ex. H. On November 3, 2013, Plaintiff was able to appeal his placement into the Tier II Program, and the Facility Director denied his appeal. McLaughlin Aff., ¶ 27; Bostick Aff., ¶ 13, Ex. "I".

Plaintiff always received the 90-Day Review decision, had an opportunity to speak, and on occasion appealed it as he was allowed to do. McLaughin Aff; Bobbitt Aff;

16

Bostick Aff. At the 90-day reviews, Tier II Classification Committee members Bostick and Bobbitt determined whether the Plaintiff should remain in his current phase or move up or down a phase based upon a number of factors, including the Plaintiff's disciplinary history, and then documented the rationale for their decision in accordance with SOP II09-0003.

Plaintiff has been afforded an opportunity to be heard at a meaningful time and in a meaningful manner. It is therefore recommended that Defendants' motion for summary judgment be granted at to Plaintiff's Due Process claims.

## CONCLUSION

For the reasons stated above Plaintiff's motions to compel (ECF Nos. 45, 54, 61) and it is recommended that Defendant's motion for summary judgment (ECF No. 55) be granted. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection,

however, the court may review on appeal for plain error if necessary in the interests of justice."

SO RECOMMENDED, this 31st day of January, 2017.

S/ Stephen Hyles<br>
UNITED STATES MAGISTRATE JUDGE